EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
THE LAW OFFICE OF DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.V. | ) Case No. |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY DEMAND** |
| vs. | ) |
| UNITED STATES OF AMERICA; JOHN BELLHOUSE, in his individual capacity; ROSS KLINGER, in his individual capacity; RAY GARCIA, in his individual capacity. | ) |
| Defendants. | ) |

## INTRODUCTION

1. A.V. served a sentence in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for nearly fifteen years.

2. While housed at FCI Dublin, A.V. faced constant sexual harassment, culminating in sexual abuse.

3. Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

4. A.V. is currently battling long-lasting traumatization.

## JURISDICTION AND VENUE

5. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

6. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff A.V. will be filing an administrative motion to relate this case to those other cases.

## PARTIES

9. Plaintiff A.V. was at all times relevant here incarcerated in FCI Dublin.

10. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin. FCI Dublin was a federal female low-security correctional institution.

11. Defendant John Bellhouse was a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

12. Defendant Ross Klinger was a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

13. Defendant Ray Garcia was the Warden and PREA Coordinator during the time of this abuse. He is sued in his individual capacity.

14. While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff A.V. Plaintiff A.V. was dependent upon Defendant United States for her personal security and necessities.

15. In performing the acts and/or omissions contained herein, Defendants Bellhouse and Klinger acted under color of federal law, and Plaintiff A.V. is informed and believes they acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff A.V. They knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff A.V. and to her constitutionally and statutorily protected rights.

16. In performing the acts and/or omissions contained herein, Defendant Garcia acted under color of federal law, and Plaintiff A.V. is informed and believes he acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff A.V. He knew and/or should have known that his conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff A.V. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendant Garcia failed to take steps to protect Plaintiff A.V. and to ensure her rights to safety from sexual abuse.

17. Defendants Bellhouse and Klinger and Officer Ramos openly and freely sexually abused women in custody, including Plaintiff A.V. Defendant United States knew or should have known that Defendants Bellhouse and Klinger and Officer Ramos were sexually abusing prisoners, including Plaintiff A.V. Despite this, Defendant United States failed to take steps to protect Plaintiff A.V. and to ensure her rights to safety from sexual abuse.

**FACTS**

18. Plaintiff A.V. was incarcerated at FCI Dublin beginning in March of 2009 until the facility closed in April of 2024.

19. She was then transferred to FCI Danbury until she was granted clemency from the BOP in 2025 for the abuse she suffered at FCI Dublin.

20. Throughout Plaintiff A.V.'s fifteen-year incarceration at FCI Dublin, she saw constant sexual harassment and sexual violence against the prisoners and retaliation for reporting abuse.

21. In 2015, Plaintiff A.V. helped another prisoner file a staff complaint.

22. Several days after the staff complaint was filed, the staff member whom Plaintiff A.V. helped file a complaint about sent Plaintiff A.V. and the other prisoner to the Special Housing Unit ("SHU").

23. In the SHU, Plaintiff A.V. was confined in her room for 23-24 hours a day, and when she did get recreation, it was for one hour and it occurred in a small cage. She received smaller portions of food, and she could not supplement her meals with commissary items because she was denied access to commissary. She was also denied visits and materials to send letters.

24. She was confined for two weeks during this retaliatory SHU placement.

25. When she was released from the SHU, she was removed from the unit in which she had lived for years and, as a result, removed from her job.

26. In the new unit, she was denied her lower bunk accommodation for her sciatica pain because the unit staff, including the staff member whom she had helped the prisoner complain about, removed the accommodation.

27. Plaintiff A.V. had not been in trouble before. The severe consequences she suffered for helping another prisoner report staff misconduct made it very clear to Plaintiff A.V. that the consequences for complaining about staff would be severe and swift.

28. In 2017, Plaintiff A.V. began working in the safety department under Defendant Bellhouse.

29. She worked alongside four or five other prisoners.

30. Shortly after she started working, Defendant Bellhouse began bringing in outside contraband.

31. At first, Defendant Bellhouse would bring in contraband and offer it to Plaintiff A.V. without expectation.

32. He would use contraband and verbal praise to disarm Plaintiff A.V. and other women working in the safety department.

33. When Plaintiff A.V. let her guard down, Defendant Bellhouse started groping her and propositioning her for sex.

34. When Plaintiff A.V. would come into his office for official duties, such as to get files, Defendant Bellhouse would grab Plaintiff A.V.'s buttocks, legs, and breasts, while also grabbing his penis.

35. Defendant Bellhouse propositioned Plaintiff A.V. for sex by grabbing her waist and legs and pulling her toward him. She was able to break free of his grasp, but feared he would do it again and again until he was successful in forcing her to have sex with him.

36. Plaintiff A.V. was terrified of Defendant Bellhouse and his unwanted groping and propositions for sex, but did not know what to do.

37. Around this time, Defendant Bellhouse began sexually abusing another woman in the safety department.

38. Defendant Bellhouse would bring this other woman into the safety department office, where he would sexually abuse her and leave the door open so that the other women in the safety department had to watch and/or listen to his sexual abuse.

39. Plaintiff A.V. was forced to watch or otherwise listen to the sexual abuse.

40. Plaintiff A.V. was wrought. Defendant Bellhouse was a manager, which meant that he had access to listen to her phone calls with her loved ones and had access to her contacts, including her family members' phone numbers and addresses.

41. She feared reporting any abuse because she did not want to be retaliated against, and she feared for her family's safety. She also feared that reporting Defendant Bellhouse would make her more of a target of his sexual desire. His brazen behavior with the other prisoner made it clear that there were no consequences for officers who sexually abused prisoners and that the BOP did not care.

42. At some point in 2018 or 2019, Defendant Klinger began working in the safety department alongside Defendant Bellhouse and the other women.

43. Shortly after Defendant Klinger began working there, he also began sexually abusing one of the other prisoners.

44. Like Defendant Bellhouse, Defendant Klinger would bring this prisoner to the safety department office and abuse her.

45. Defendant Klinger demanded that Plaintiff A.V. look out for him and implied that he would not protect her if she did not. In addition, Defendant Klinger had anger issues. If someone did not do as he ordered, he would lose his temper and yell at and berate them. This placed Plaintiff A.V. in fear for her safety from Klingler and from others who may have done Klinger's bidding if she did not comply with his order to have his back.

46. As with Defendant Bellhouse, Defendant Klinger would bring in women to abuse while Plaintiff A.V. was in the Safety office. Plaintiff A.V. understood, based on his order to look out for him, that she was required to keep quiet and let him know if someone came into the Safety office.

47. Plaintiff A.V. would try to make excuses to get out of staying at the office as a lookout, but this became more difficult during COVID. During COVID lockdown, she was often forced to stay because she was not able to move about the compound without an escort.

48. Plaintiff A.V. also feared retaliation from Defendant Klinger because of his anger issues. He was also known to give people write-ups for no reason.

49. Such arbitrary and false discipline could be used to deny Plaintiff A.V. earlier placement in halfway houses and could delay her release from prison.

50. Defendant Bellhouse would sexually abuse prisoners in the Safety office daily.

51. Defendant Klinger would sexually abuse prisoners in the Safety office at least two or three times a week.

52. On numerous occasions, Defendant Garcia would walk past the safety department while Defendants Bellhouse and Klinger were sexually abusing prisoners.

53. Although their sexual abuse was obvious and conducted openly, Defendant Garcia did nothing.

54. Despite the obviousness of Defendants Bellhouse's and Klinger's sexual abuse, staff failed to intervene.

55. Because of this—as well as the retaliation Plaintiff A.V. saw others experience for making PREA reports or reporting sexual assaults—Plaintiff A.V. did not believe she could report this abuse.

56. While Plaintiff A.V. was working in the safety department in 2018 and 2019, she had job duties that took her all around the prison. Officer Nicholas Theodore Ramos, now deceased, was one of the officers on the compound, and Plaintiff A.V. was forced to interact with him to request that he open certain gates and doors for her to perform her job duties.

57. Initially, Ramos was respectful to Plaintiff A.V., and she felt like they developed a rapport.

58. He would be kind to her and let her walk to the safety department on her own.

59. Sometimes, Plaintiff A.V. would talk with Ramos in his office, and it would be just the two of them alone.

60. During these conversations, Ramos began to ask Plaintiff A.V. personal questions.

61. On one such occasion, he confessed to her that he had a sexual dream about her.

62. Once he groomed her with personal questions and privileges, Ramos escalated his behavior. First, he grabbed Plaintiff A.V. and kissed her in the office.

63. Later, on two different occasions, once in the warehouse and another time in the compound office, Ramos vaginally penetrated her with his fingers and penis.

64. Shortly after the second incident, Plaintiff A.V. was called into Lt. Putnam's office to speak to him about Defendant Bellhouse.

65. On this occasion, Plaintiff A.V. was working in the safety department and was called out of the department to report to Lt. Putnam's office. Defendant Bellhouse told her she was being summoned and asked her what it was about. She did not know and told him as much.

66. When Lt. Putnam questioned Plaintiff A.V., she was too scared to say anything because she knew she would be returned to the safety department and have to face Defendant Bellhouse.

67. When she returned, Defendant Bellhouse interrogated her about what she said and what the meeting was about. Plaintiff A.V. was very frightened.

68. Although the investigation did not appear to slow Defendant Bellhouse's misconduct, Ramos stopped his sexual abuse of Plaintiff A.V.

69. Instead, Ramos turned vindictive. Apparently concerned that her trips to meet with Lt. Putnam were about him, he began to retaliate and punish Plaintiff A.V.

70. Ramos would search her room more frequently, would yell at her, and be more aggressive than he had ever been.

71. Plaintiff A.V. was terrified about additional retaliation she might suffer, so she kept quiet about the sexual abuse.

72. In 2022, when attorneys began investigating the allegations at FCI Dublin, Plaintiff A.V. wrote a declaration about the safety department.

73. In 2023, Plaintiff A.V. spoke with the Assistant United States Attorney and was ultimately subpoenaed to Defendant Bellhouse's trial, where she was a witness for the prosecution.

74. After this, Plaintiff A.V. witnessed officers tell each other, "Don't talk to her, she's hot." She understood this to mean that they should not talk to Plaintiff A.V. because she was cooperating with authorities.

75. Officers and staff performed overly destructive searches of her room and took away Plaintiff A.V.'s personal belongings and desk that she used for her job.

76. Officers and staff would also read Plaintiff A.V.'s emails and quote them back to her, which she took to be an assertion of their power and a sign that she was being closely monitored.

77. They tried to make everyday living harder than it had to be.

78. This conduct continued until she left FCI Dublin.

79. When FCI Dublin closed in 2024, Plaintiff A.V. was transferred to a separate BOP facility.

80. Then, in May 2025, Plaintiff A.V. was granted clemency and released from BOP custody.

81. Plaintiff A.V. suffers from anxiety and depression from all the sexual harassment, sexual abuse, and retaliation she suffered.

## EXHAUSTION

82. On February 5, 2025, Plaintiff A.V., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

83. The BOP acknowledged receipt on February 18, 2025.

84. The BOP has not substantively responded to her claim.

## EQUITABLE TOLLING

85. Plaintiff A.V. is entitled to equitable tolling for her FTCA claim.

86. The FTCA's statute of limitations is subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015).

87. Equitable tolling applies when 1) a plaintiff pursued their rights diligently, and 2) extraordinary circumstances prevented timely filing. *Wong v. Beebe*, 732 F. 2d 1030, 1052 (9th Cir. 2013).

88. Courts have long recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, retaliation, and coercion prevented timely filing. *See* e.g., *Su v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24; *Stoll v. Runyon*, 165 F. 3d 1238, 1242 (9th Cir. 1999) (equitable tolling is appropriate where sexual abuse and post-traumatic stress disorder rendered the plaintiff unable to timely pursue claim).

89. Plaintiff A.V. clearly faced extraordinary circumstances preventing the timely filing of her FTCA claim.

90. Because Plaintiff A.V. remained incarcerated at FCI Dublin until 2024, remained incarcerated within the BOP until 2025, and was repeatedly retaliated against and threatened with retaliation prior to, and after her working with the District Attorney, she continued to experience extraordinary circumstances preventing her from freely accessing the courts or safely pursuing her claims.

91. As long as she remained under BOP custody and control, the threats, coercion, and fear of retaliation continued to silence her.

92. A court-appointed Special Master confirmed that during the time of Plaintiff A.V.'s incarceration, "there was no safe or consistent path women could take to file sex abuse complaints," that women were "intimidated and forced to justify why they needed to complete [PREA] forms in the first place," and that women who tried to report abuse were met with retaliation, including solitary confinement and wrongful disciplinary infractions which extended their incarceration.[1]

93. Plaintiff A.V. has diligently pursued her rights by initiating this claim as soon as she felt some level of safety and saw that other women were being believed and receiving justice.

94. Plaintiff A.V. found an attorney as soon as she was able.

95. Plaintiff A.V. has further demonstrated that she faced extraordinary circumstances, facing sexual violence and ongoing retaliation, preventing her from filing within the ordinary FTCA statutory period.

96. Defendants are not entitled to benefit from their own misconduct. Equitable tolling of Plaintiff A.V.'s statute of limitations prevents this very result. Without the equitable tolling of Plaintiff's statute of limitations, Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting her claim within the statutory period.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.4)**

97. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

---

[1] Lisa Fernandez, FCI Dublin Special Master Finds 'Cascade Failures at Women's Prison, KTVU (Aug. 20, 2024), https://www.ktvu.com/news/fci-dublin-special-master-finds-cascade-failures-womens-prison; Lisa Fernandez, Special Master Issues 1st Report on FCI Dublin Sex Assault, KTVU (Aug. 19, 2024), https://www.ktvu.com/news/special-master-issues-1st-report-fci-dublin-sex-assault; Lisa Fernandez, FCI Dublin Special Master Authorized to Ensure Women Care for at Other Prisons: Judge, KTVU (May 21, 2024), https://www.ktvu.com/news/fci-dublin-special-master-authorized-to-ensure-women-cared-for-at-other-prisons-judge

98. Plaintiff A.V. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees, Defendants Bellhouse and Klinger, and Officer Ramos.

99. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

100. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

101. Defendants Bellhouse's and Klinger's, and Officer Ramos', positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

102. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

103. Defendants Bellhouse and Klinger, and Officer Ramos, discriminated against Plaintiff A.V. based on her gender when they repeatedly sexually abused her by physically subjecting her to sexual acts.

104. By these acts, Defendants Bellhouse and Klinger, and Officer Ramos, caused Plaintiff A.V. physical, mental, and emotional injuries as well as injury to her personal dignity.

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendants Bellhouse and Klinger)**
**(FTCA; Cal. Civ. Code § 52.4)**

105. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

106. Plaintiff A.V. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against Defendants Bellhouse and Klinger.

107. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

108. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

109. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

110. Plaintiff has a nonfrivolous argument that Defendants Bellhouse and Klinger bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

111. Defendants Bellhouse and Klinger discriminated against Plaintiff A.V. based on her gender when they repeatedly sexually abused her by physically subjecting her to sexual acts.

112. By these acts, Defendants Bellhouse and Klinger caused Plaintiff A.V. physical, mental, and emotional injuries as well as injury to her personal dignity.

**THIRD CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant United States)**
**(FTCA; California Common Law)**

113. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

114. Plaintiff A.V. brings this claim for sexual assault under the Federal Tort Claims Act for violation of California common law against the United States based on the conduct of its employees, Defendants Bellhouse and Klinger, and Officer Ramos.

115. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

116. Defendants Bellhouse's and Klinger's positions, as well as Ramos', as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

117. Defendants Bellhouse and Klinger, and Officer Ramos, violated Plaintiff A.V.'s right to be free from sexual assault by repeatedly engaging in conduct that placed Plaintiff in fear of imminent sexual abuse.

118. Defendants Bellhouse's and Klinger's, and Officer Ramos', misconduct towards Plaintiff A.V. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

119. Defendants Bellhouse and Klinger, and Officer Ramos, intentionally and maliciously subjected Plaintiff A.V. to imminent fear that they would engage in harmful or offensive contact with Plaintiff A.V.'s person.

120. By intentionally subjecting Plaintiff A.V. to this misconduct, Defendants Bellhouse and Klinger, and Officer Ramos, acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

121. By repeatedly subjecting Plaintiff A.V. to the threat of sexual acts, Defendants Bellhouse and Klinger, and Officer Ramos, caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FOURTH CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendants Bellhouse and Klinger)**
**(California Common Law)**

122. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

123. Plaintiff A.V. brings this claim for sexual assault for violation of her rights under California common law against Defendants Bellhouse and Klinger.

124. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

125. Defendants Bellhouse's and Klinger's positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

126. Defendants Bellhouse and Klinger violated Plaintiff A.V.'s right to be free from sexual assault by repeatedly engaging in conduct that placed Plaintiff in fear of imminent sexual abuse.

127. Defendants Bellhouse's and Klinger's misconduct towards Plaintiff A.V. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

128. Defendants Bellhouse and Klinger intentionally and maliciously subjected Plaintiff A.V. to imminent fear that they would engage in harmful or offensive contact with Plaintiff A.V.'s person.

129. By intentionally subjecting Plaintiff A.V. to this misconduct, Defendants Bellhouse and Klinger acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

130. By repeatedly subjecting Plaintiff A.V. to the threat of sexual acts, Defendants Bellhouse and Klinger caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FIFTH CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 1708.5)**

131. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

132. Plaintiff A.V. brings this claim for sexual battery under the Federal Tort Claims Act based on California Civil Code § 1708.5 against the United States based on the conduct of its employees, Defendants Bellhouse and Klinger, and Officer Ramos.

133. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

134. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

135. Defendants Bellhouse's and Klinger's, as well as Officer Ramos', positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

136. Defendants Bellhouse and Klinger, and Officer Ramos, committed sexual battery against Plaintiff A.V. by repeatedly sexually abusing and physically assaulting her while she was incarcerated at FCI Dublin.

137. The sexual abuse of Plaintiff A.V. was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

138. Defendants Bellhouse and Klinger, and Officer Ramos, subjected Plaintiff A.V. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff A.V.'s person.

## SIXTH CLAIM FOR RELIEF
## SEXUAL BATTERY
## (against Defendants Bellhouse and Klinger)
## (Cal. Civ. Code § 1708.5)

139. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

140. Plaintiff A.V. brings this claim for sexual battery under California Civil Code § 1708.5 against Defendants Bellhouse and Klinger.

141. Defendants Bellhouse and Klinger committed sexual battery against Plaintiff A.V. by repeatedly sexually abusing her while she was incarcerated at FCI Dublin.

142. The sexual abuse of Plaintiff A.V. was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

143. Defendants Bellhouse and Klinger subjected Plaintiff A.V. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff A.V.'s person.

## SEVENTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (against Defendant United States)
## (FTCA; California Common Law)

144. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

145. Plaintiff A.V. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of its employees, Defendants Bellhouse and Klinger, and Officer Ramos.

146. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

147. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

148. Defendants Bellhouse's and Klinger's, as well as Officer Ramos', positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

149. Defendants Bellhouse and Klinger, and Officer Ramos, engaged in outrageous conduct by repeatedly subjecting Plaintiff A.V. to sexual acts while she was incarcerated as a prisoner in their employer's custody. They abused their authority over Plaintiff A.V. and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

150. Defendants Bellhouse's and Klinger's, and Officer Ramos', sexual abuse caused Plaintiff A.V. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

151. Defendants Bellhouse and Klinger, and Officer Ramos, intended to cause Plaintiff A.V. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of a prisoner.

**EIGHTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendants Bellhouse and Klinger)**
**(California Common Law)**

152. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

153. Plaintiff A.V. brings this claim for the intentional infliction of emotional distress against Defendants Bellhouse and Klinger.

154. Defendants Bellhouse and Klinger engaged in outrageous conduct by repeatedly subjecting Plaintiff A.V. to sexual acts while she was incarcerated as a prisoner in their employer's custody. They abused their authority over Plaintiff A.V. and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

155. Defendants Bellhouse's and Klinger's sexual abuse caused Plaintiff A.V. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

156. Defendants Bellhouse and Klinger intended to cause Plaintiff A.V. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of a prisoner.

**NINTH CLAIM FOR RELIEF**
**BANE ACT**
**(against all Defendants)**
**(FTCA; Cal. Civ. Code § 52.1)**

157. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

158. Plaintiff A.V. was in the custody and control of the United States during all relevant times.

159. Defendants Bellhouse, Klinger, and Garcia violated Plaintiff A.V.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; her right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual abuse; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

160. Defendant United States, by the actions of its employees Defendants Bellhouse, Klinger, and Garcia, and Officer Ramos, interfered with Plaintiff A.V.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; her right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual abuse; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

161. As a proximate result of these acts, Plaintiff A.V. sustained damage and injury.

**TENTH CLAIM FOR RELIEF**
**TRAFFICKING VICTIMS PROTECTION ACT**
**(against all Defendants)**
**(18 U.S.C. § 1581, *et seq.*)**

162. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

163. Defendants Bellhouse and Klinger knowingly recruited, enticed, and solicited Plaintiff A.V. by offering benefits and things of value, such as not being placed in the SHU, for acting as a lookout, not reporting sexual assaults, and being touched on her buttocks and breasts.

164. Defendant Garcia knew of, or should have reasonably known, that Defendants Bellhouse and Klinger were soliciting Plaintiff A.V. and other prisoners within the safety department in exchange for sex acts, and benefited by failing to protect Plaintiff A.V.

165. This conduct has caused Plaintiff A.V. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

**ELEVENTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

166. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

167. Defendants Bellhouse and Klinger, and Officer Ramos, knowingly recruited, enticed, and solicited Plaintiff A.V. by offering benefits and things of value, such as not being placed in the SHU, for acting as a lookout, not reporting sexual assaults, and being touched on her buttocks and breasts.

168. Defendant United States knew or should have known that Defendants Bellhouse and Klinger, and Officer Ramos, were engaged in these activities and intentionally placed Plaintiff A.V. at greater risk of harm and/or failed to act in a manner that protected Plaintiff A.V. from harm.

169. Defendant United States employed Defendants Bellhouse and Klinger, and Officer Ramos, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

170. This conduct has caused Plaintiff A.V. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**TWELFTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendants Bellhouse, Klinger, and Garcia)**
**(Cal. Civ. Code § 52.5)**

171. Plaintiff A.V. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

172. Defendants Bellhouse and Klinger, and Officer Ramos knowingly recruited, enticed, and solicited Plaintiff A.V. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

173. Defendants Bellhouse and Klinger, and Officer Ramos, made Plaintiff A.V. engage in sex acts through force and coercion.

174. Defendant Garcia knew or should have known that Defendants Bellhouse and Klinger, and Officer Ramos, were engaged in these activities and intentionally placed Plaintiff A.V. in greater risk of harm and/or failed to act in a manner that protected Plaintiff A.V. from harm.

175.   This conduct has caused Plaintiff A.V. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**PRAYER FOR RELIEF**

176.   Plaintiff A.V. prays for judgment against Defendants, and each of them, as follows:

(a)   An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff A.V. in an amount to be determined at trial;

(b)   An award to Plaintiff A.V. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c)   For such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff A.V. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 19, 2025

SIEGEL, YEE, BRUNNER & MEHTA

By: _____
EmilyRose Johns

THE LAW OFFICE OF DEBORAH M. GOLDEN

By: /s/ *Deborah M. Golden*
Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming

*Attorneys for Plaintiff*